**ADELMAN REAL ESTATE COMPANY et al., Appellants,**

v.

**GABANIC et al., Appellees.**

[Cite as *Adelman Real Estate Co. v. Gabanic* (1996), 109 Ohio App.3d 689.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 95–G–1911.

Decided March 11, 1996.

*Joseph H. Weiss, Jr.,* and *William H. Armstrong,* for appellants.

*David P. Joyce*, Geauga County Prosecuting Attorney, and *Lawrence M. Wharton*, Assistant Prosecuting Attorney, for appellees.

---

CHRISTLEY, Judge.

Appellants, Adelman Real Estate Company and Turney Auto Lease, Inc., appeal the judgment of the Geauga County Court of Common Pleas affirming the denial of their application for a conditional use permit by appellees, the Chester Township Board of Zoning Appeals and George Gabanic, Chester Township Zoning Inspector. For the reasons that follow, we reverse that judgment.

On July 5, 1994, appellants filed an application for a conditional use permit to operate an auto lease and new car sales business at 12694 Chillicothe Road, Chester Township, in Geauga County. An adjudicatory hearing, per R.C. 519.14, was held on July 25, 1994, before appellees. Those in attendance were sworn in by one of appellees' members. Appellants' architect, Neal Hoffman, presented a site plan of the area and explained the details of the proposed use.

Several Chester Township residents raised concerns about the potential for traffic congestion and traffic accidents at the main entrance, which is located off the heavily traveled access road, the potential for injuries to patrons who might park in the adjacent shopping plaza parking lot and walk across the busy access drive to reach the display area, and the detrimental effects that the proposed use might have on the aesthetic view of the area.

Hoffman and Howard Adelman explained that landscaping would be provided to act as a green buffer to the area, as well as a deterrent to the use of the adjacent plaza parking lot to gain access to the display area. They also explained that a split-rail fence would be erected to deter the use of the plaza parking lot.

On August 1, 1994, appellees received a letter from several members of the Chesterland Baptist Church, located at 12670 Chillicothe Road, urging the board to deny appellants' application for a conditional use permit. The letter reemphasized their safety concerns for the patrons and the detrimental effects on the character of the community as "countryside living" if the proposed use was permitted.

On August 22, 1994, the adjudicatory hearing continued, and those in attendance were again sworn to give truthful testimony. Several Chester Township residents repeated their concerns about the safety of patrons, the volume of traffic, and the detrimental effects on the aesthetic value of the area if the proposed use was approved. A member of the nearby Baptist church expressed concern about how and where the snow would be removed during the winter months if the autos were displayed on the lot and a fence was installed.

Some of appellees' members spoke about the proposed use on a .88-acre lot which already accommodates a private residence and an auto repair shop. Other members were worried about the sixteen-foot driveway between the two existing buildings and the accessibility to emergency vehicles of the proposed use area located behind the two existing buildings. One member stated that when he observed six to seven autos from the auto repair business parked on the lot, it was impossible to gain access to the back part of the private residence.

Appellants' witness offered testimony that the emergency vehicles would gain access to the buildings from either the main road, the western portion of the property, or the property to its north. He further indicated that storm water could be collected in a catch basin that is connected to a storm sewer.

At the conclusion of the testimony, appellees voted to deny appellants' request for a conditional use permit. On October 11, 1994, appellants appealed that denial to the Geauga County Court of Common Pleas. The trial court affirmed appellees' denial of appellants' application on February 10, 1995.

Appellants filed a timely notice of appeal presenting three assignments of error. However, appellants' three assignments of error challenge only one action of the trial court, the affirmance of appellees' decision and, thus, we will address all of the assigned errors concurrently.

Initially, we note that R.C. Chapter 2506, which governs administrative appeals, provides at R.C. 2506.04 that:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. * * * "

■ Thus, the standard of review applied by the trial court is whether there is a preponderance of reliable, probative and substantial evidence in the record to support the administrative agency's decision. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 852; *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 201, 389 N.E.2d 1113, 1117; *Meadow Creek Co., Inc. v. Brimfield Twp.* (June 30, 1994), Portage App. No. 93–P–0070, unreported, at 3, 1994 WL 321231.

■ The trial court must give due deference to the agency's resolution of evidentiary conflicts, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267, and the court may not substitute its judgment for that of the agency. *Dudukovich,* 58 Ohio St.2d at 207, 12 O.O.3d at 201, 389 N.E.2d at 1117.

■ Furthermore, the court is "bound by the nature of administrative proceedings to presume that the decision of the administrative agency is reasonable and

valid." *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580, 584. See, also, *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400.

As an appellate court, our review is limited to a determination of whether we can say, as a matter of law, that the decision of the trial court is not supported by a preponderance of reliable, probative and substantial evidence. *Kisil*, 12 Ohio St.3d at 34, 12 OBR at 29, 465 N.E.2d at 852; *Meadow Creek Co.* at 3. We do not have the authority to weigh the preponderance of reliable, probative and substantial evidence as is granted to the trial court. *Kisil.*

Appellants argue that the trial court erred in failing to reverse the board's denial because it was not supported by a preponderance of reliable, probative and substantial evidence on the whole record. We agree.

Section 7.9(d) of the Chester Township Zoning Resolution provides that:

" * * * The Board may grant conditional zoning certificates, after a public hearing * * *, for the use of land, buildings or other structures but only for such specific uses that are listed in the several use districts as subject to conditional zoning certificates. The Board shall act in accordance with the following requirements:

"1. The Board shall consider the accessibility of the lot in question for fire protection, access of light and air to the lot and to adjoining lots, traffic generating capacity, the size and kind of buildings in the vicinity, and the safety and convenience of traffic movement in relation to the proposed use.

" * * * *

"3. In acting on any such application the Board may require that landscaping, fences, and walls designed to further the purpose of this Resolution be provided and maintained as a condition to the establishment of any use to which they are appurtenant.

"4. In considering any site plan the Board shall endeavor to assure a beneficial relation among the buildings on the site if more than one, appropriate landscaping, and a satisfactory relation between the development of the site and the adjacent neighborhoods * * *."

The common pleas court indicated that "[t]he record here is replete with expressions of 'concern' which clearly demonstrate the board members' knowledge of the area, the evidence before them, and their duties under section 7.9, paragraph 'd,' of the Chester Township zoning resolution."

In *In re Rocky Point Plaza Corp.* (1993), 86 Ohio App.3d 486, 621 N.E.2d 566,[1] Judge Whiteside indicated very clearly the pitfalls of allowing the adjudicatory hearings prescribed for conditional use permits to turn into the legislative public hearings prescribed for applications for rezoning.

"In other words, there is no public hearing upon an application for a variance or an application for a conditional use permit but, instead, an adjudication hearing, which is open to the public. A public hearing is one where members of the general public may speak and express their views on the question of governmental, political and policy considerations as to whether certain legislation should be adopted. Adjudication hearings, however, are not subject to such public comment but, instead, involve the determination of rights of specific persons and whether such rights should be granted based upon *evidence (not public opinion)* presented at the hearing. [Emphasis added.]

" * * *

"Accordingly, in the limited weighing of the evidence to be undertaken by the common pleas court, consideration must be given to the nature of the evidence, including the question of whether it was given under oath and was subject to cross-examination." *Id.* at 491–493, 621 N.E.2d at 569–570.

The fact that adjudicatory hearings are to be open to the public does not result in their transformation into legislative public hearings with the corresponding right to receive input of public comment at that time. The ploy of swearing in the members of the public does not alter the fact that the bulk of these witnesses are merely offering their subjective and speculative comments and unsubstantiated opinions. Such testimony cannot rise to the level of the reliable, probative, and substantial evidence required under *Kisil* and *Dudukovich* unless there are facts included as part of those opinions.

Further, cross-examination is intended to be a vital part of those adjudicatory hearings. It would appear that only appellants' witnesses were subjected to any type of cross-examination, and even that would be a rather loose use of the term because such questioning was not conducted by the prosecutor; instead it was done directly by the "witnesses" who were opposed to the request.

It is unfortunate that the Supreme Court of Ohio did not provide more guidance concerning what it considered to be a preponderance of reliable, probative and substantial evidence in *Community Concerned Citizens, Inc.* However, the court did indicate that "the record shows cumulative, *direct evidence* of traffic and related safety problems * * *." (Emphasis added.) *Id.,*

---

1. While *Rocky Point* dealt with unsworn testimony, much of it is, nevertheless, quite relevant to the issue here.

66 Ohio St.3d at 456, 613 N.E.2d at 584. This was the only reference as to what it was that the court found to be sufficient; there was no mention of the underlying evidentiary facts which led to this conclusion.

Nevertheless, the use of the phrase "direct evidence" would indicate that something more than speculation or opinion is required. Traditionally, direct evidence is viewed as the opposite of circumstantial evidence. It is complete in itself and does not require additional facts or inferences to make it sufficient as proof of a fact. It must therefore be presumed that *Community Concerned Citizens* had such "direct evidence."

■ The record in the instant matter does not reflect the testimony of any witness for appellees who was in a position to speak authoritatively to any of the "concerns" raised at the hearings. Everything in opposition to the request was voiced in terms of very subjective language, such as "might," "potential," "feels," and "wondered."

The only substantive concern addressed was whether there was a potential problem with the accessibility of the property to emergency vehicles. The specific problem was that the two preexisting primary buildings were only sixteen feet apart instead of the presently required fifty feet. The architect's response was that there were three other methods of access to the property and that the driveway would be monitored to prevent parking there. It was his testimonial opinion that there was no problem with emergency access.

This was the pattern for every concern voiced. A hypothetical concern was raised and either appellants or their architect had a specific solution. There was no apparent rebuttal. While the findings of fact set forth by the board outline several potential legitimate concerns, the record provides little or no factual support as previously discussed.

That being the case, we fail to see how the common pleas court could have found a preponderance of reliable, probative, and substantial evidence. As was well stated in *Tempo Holding Co. v. Oxford City Council* (1992), 78 Ohio App.3d 1, 603 N.E.2d 414:

"Nonetheless, the authority to examine the effects of a proposed use on its surroundings does not imply unlimited discretion on the part of the decision-making body, and a decision concerning the effects of a particular use on adjacent uses and structures and uses must be based on substantial, reliable, and credible evidence." *Id.* at 9, 603 N.E.2d at 419.

There the appellate court found that "[t]he witnesses who voiced opposition to the proposed use did so only in conclusory terms, and they based their opinions largely on speculation." *Id.* We do not believe that the record in the instant case could be characterized more accurately than with the above quote.

For the above reasons, the judgment of the trial court is reversed and the cause is remanded.

*Judgment accordingly.*

FORD, P.J., concurs.

JOSEPH E. MAHONEY, J., dissents.

JOSEPH E. MAHONEY, Judge, dissenting.

I respectfully dissent from the opinion and judgment of the majority. While that opinion correctly sets forth the respective roles of both the common pleas and appellate courts in an administrative appeal pursuant to R.C. 2506.04, I disagree with this court's application of those roles to the facts of the instant matter.

In reaching its decision that the common pleas court could not have found a preponderance of reliable, probative, and substantial evidence to support the board's denial of appellants' application for a conditional use permit, the majority opinion acknowledges that the board was presented with "legitimate concerns" regarding appellants' proposed use of the property. Specifically, several Chester Township residents presented sworn testimony regarding increased traffic congestion on an already heavily traveled access road, safety concerns for patrons who might cross this access road from an adjacent shopping plaza, and the detrimental effect appellants' proposed use would have on the aesthetic value of the area. However, rather than allowing the Chester Township Board of Zoning Appeals to use its expertise to weigh the residents' concerns regarding the proposed use for the land by appellants, this court has determined that the testimony these residents presented was insufficient to support the board's decision denying appellants' application.

The majority's opinion is based, in large part, on the Ohio Supreme Court decision of *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 613 N.E.2d 580. In *Concerned Citizens*, an application was filed seeking a conditional use permit to operate a child care center on property zoned as single-family residential. The Union Township Board of Zoning Appeals denied the application. The Supreme Court of Ohio, in upholding the board's action, noted that "the record shows cumulative, *direct evidence* of traffic and related safety problems that would obviously be exacerbated by appellant's proposed use for the property." (Emphasis added.) *Id.* at 456, 613 N.E.2d at 584. This court has today determined that, when considering whether appellees' decision was supported by a preponderance of the reliable,

probative, and substantial evidence, the words "direct evidence" require something more than the "concerns" expressed by the residents of Chester Township.

However, a thorough reading of *Concerned Citizens* reveals that the testimony presented before the board in that case was similar to that presented in the case *sub judice*. In discussing why the board's denial was not unreasonable when it had previously granted a similar application for a conditional use permit to operate a child care center, the Supreme Court of Ohio noted that "[i]n contrast [to the earlier case when no one opposed to the use attended the hearing], ten persons opposing the conditional use spoke at [the later hearing], and cumulative information was submitted to [the zoning board] detailing *concerns* such as pre-existing sewer, traffic and safety problems. Therefore, it was not unreasonable for [the zoning board] in the case before us to reach a different result." (Emphasis added.) *Id.* at 457, 613 N.E.2d at 584. Thus, the concerns that the residents of Chester Township presented, at least the testimony regarding the current traffic congestion and the detrimental effect appellants' proposed use would have on the character of the community, appear to be sufficient to uphold the board's denial of a conditional use permit. See *Chrisman v. Butler Cty. Bd. of Zoning Appeals* (July 25, 1988), Butler App. No. CA87–12–168, unreported, 1988 WL 76819; *Blakley v. Butler Co. Bd. of Zoning Appeals* (Apr. 12, 1993), Butler App. No. CA92–07–123, unreported, 1993 WL 106149 (Koehler, P.J., dissenting); *Capital Oil & Gas, Inc. v. Canfield Planning Comm. Acting as Zoning Bd. of Appeals* (Apr. 5, 1988), Mahoning App. No. 87 C.A. 69, unreported, 1988 WL 37976; *Diamond Crystal Salt Co. v. Coventry Twp.* (Oct. 2, 1985), Summit App. No. 12137, unreported, 1985 WL 10869. But, see, *Kayo Oil Co. v. Dayton Bd. of Zoning Appeals* (Dec. 8, 1988), Montgomery App. No. 11117, unreported, 1988 WL 131892.

Consequently, I would defer to the Board of Zoning Appeals' resolution of the testimony presented before it, and, accordingly, I would have affirmed the judgment of the common pleas court.