DECISION AND JUDGMENT ENTRY
This is an appeal from a Pickaway County Common Pleas Court judgment upholding a decision by the Commercial Point Zoning Appeals Board, defendant below and appellee herein, to deny a request by Michael Casto, plaintiff below and appellant herein, to construct a car wash on property he owns in the Village of Commercial Point, Ohio. The following error is assigned for our review:
 "DID THE COMMON PLEAS COURT COMMIT PREJUDICIAL ERROR WHEN IT DENIED APPELLANTS' ZONING APPEAL?"
The record reveals the following facts pertinent to this appeal. In May of 1996, appellant bought real estate located at 6 Bellshazzer Street in the Village of Commercial Point, Ohio (hereinafter referred to as "the Village"), from the Estate of Helen Mae Williams, deceased, for the sum of $39,000. This property was situated in the middle of a "B-1" business district for purposes of the Village's zoning ordinances. However, because a single family residence was situated on the property prior to the adoption of those ordinances, the lot itself was "treated" by the Village as belonging to an "R-1" residential district.
In October of 1997, appellant applied for a zoning certificate to construct a two (2) bay self-serve car wash at the rear of the property. The zoning inspector denied the application and informed appellant that the residence would have to be removed before a business could be built thereon. Appellant filed a second application for a zoning certificate in December of that year specifying that the home would be used as an office and residence for the manager of the car wash. Again, the application was denied. The matter was then taken up with the Village's Zoning Appeals Board which ultimately upheld the decision of its zoning inspector.
Appellant commenced the action below on April 3, 1998, as an administrative appeal from the decision of the Village Zoning Appeals Board. By stipulation, the matter proceeded to a de novo
hearing on November 19, 1998, at which time John Kaiser, the Village Mayor, testified on behalf of appellee and confirmed that the residence on the property would have to be demolished before the Village would approve construction of the car wash. The trial court entered judgment on December 18, 1998, affirming that decision. The trial court reasoned that, under the Village Zoning Code, "the personal residence already situated on the lot would . . . need to be removed or somehow connected to the car wash structure in order to be in compliance with the Code." The court concluded that "[t]he [Zoning] Code does not permit a residential unit to be maintained adjacent to the principal use building [i.e. the proposed car wash] or even on the same lot as the principal use building, but must be located in the principal use building." This appeal followed.
We begin our analysis of this case by delineating the proper standard(s) of review which apply herein. Administrative appeals undertaken from zoning appeals boards are governed by R.C. Chapter 2506. Castle Manufactured Homes. Inc. v. Tegtmeier (Sep. 27, 1999), Wayne App. No. 98CA65, unreported. The first appeal is directed to the common pleas court of the county wherein the zoning board of appeals is located. R.C. 2506.01. That court reviews the decision of the board to make sure that it is not unconstitutional, illegal, arbitrary, capricious or unreasonable and that it is supported by the preponderance of substantial, reliable and probative evidence. R.C. 2506.04; also seeDudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207,389 N.E.2d 1113, 1117. The common pleas court must presume that the decision it is reviewing is reasonable and valid and refrain from substituting its judgment for that of the zoning appeals board. See generally Community Concerned Citizens. Inc. v. UnionTwp. Bd. of Zoning Appeals (1993), 66 Ohio St.3d 452, 456,613 N.E.2d 580, 584; Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34,465 N.E.2d 848, 852. If any further appeal is taken, the courts of appeals are limited to considering questions of law. R.C.2506.04. This essentially requires us to consider whether the common pleas court abused its discretion in affirming the decision of the zoning appeals board. See Jenkins v. Gallipolis
(1998), 128 Ohio App.3d 376, 381, 715 N.E.2d 196, 199; Prokos v.Athens City Bd. of Zoning Appeals (Jul. 13, 1995), Athens App. No. 94CA1638, unreported; Morris v. Houseman (Jan. 13, 1992), Ross App. No. 1763, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339,342, 695 N.E.2d 1140, 1142; Malone v. Courtyard by Marriott L.P.
(1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; Steiner v.Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855 at paragraph two of the syllabus. In order to have an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v.Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1,3. Further, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991). 57 Ohio St.3d 135,138, 566 N.E.2d 1181, 1184; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301, 1308. Appellant makes three (3) separate arguments to the effect that he should have been permitted to construct the car wash on his property. We will examine each of these arguments individually.
First, appellant advances a so-called "split" use theory. He posits that, "[w]hen the Village rezoned, it made no attempt to designate the entire lot as an island of nonconforming residential use." This was a "mistake," he continues, and allows him to treat the property as having been "`split' into a residential use and into a business use, both uses being simultaneously proper." We disagree. Appellant's "split use" theory has absolutely no support anywhere in the record. The Village Zoning Ordinances that were introduced into evidence below make no provision for such usage of property. Moreover, appellant mischaracterizes the facts in this case when he asserts that the Village "made no attempt" to designate the lot in question as an "island" of residential use during rezoning. Mayor Kaiser clearly testified that the lot was treated as "R-1" in a district zoned "B-1." Appellant also acknowledged such treatment during his own testimony. There is, in short, no support for his "split" use theory in this case and we reject that argument herein.
Appellant's next argument goes to the interpretation of the Village Zoning Code. The purpose of the "B-1" business district created by the Code is "to provide an area for most retail business and limited service uses." Commercial Point Zoning Ordinances § 7.111. It is further intended "to prohibit residential units except in conjunction with business uses." (Emphasis added.) Id. There is no question in this case that the carwash proposed by appellant is a "retail business" and, thus, constitutes a proper use for the "B-1" business district. See Commercial Point Zoning Ordinances § 7.112(A). However, as discussed previously, a single family residence existed on the lot prior to adoption of the Zoning Code in 1987 and therefore the land was treated as being zoned "R-1" residential. The only way then for appellant to construct the car wash on his property would be to either discontinue the nonconforming use pursuant to Commercial Point Zoning Ordinances § 3.04 (i.e. demolish the residence) or to use the residence "in conjunction" with the new primary use (i.e. the car wash) pursuant to Commercial Point Zoning Ordinances § 7.111. With respect to this latter option, we note the provisions of Commercial Point Zoning Ordinances § 7.113 which sets out the parameters of conjunctory ("accessory") uses as follows:
 "A. Accessory uses, buildings, or other structures customarily incidental to any aforesaid permitted use.
 B. Temporary buildings for uses incidental to construction work which buildings shall be removed upon completion or abandonment of the construction work.
C. Dwelling units, provided said units are:
 1. Located in a building whose principal use is first permitted in the B-1 District."
Appellant argues that the proposed car wash satisfies subsection (A) of this provision because the residence currently on the property will be used "as an office or for storage" and that "both uses are incidental to the operation of a car wash." We are not persuaded. The obvious flaw in this argument is that the home was also intended to be used as a residence for the car wash manager. This brings into operation subsection (C) of the above cited provision which requires that dwelling units be located "in" the principal (business) use building. The word "in" is generally taken to mean "within." See Black's Law Dictionary (5th Ed. 1979) 683; American Heritage Dictionary (2d Ed. 1982) 648. Thus, as was correctly noted by the trial court, this portion of the zoning ordinance requires that any dwelling unit used in conjunction with the business use be located within or inside the principal use building. The materials in the record clearly show that the residence was not to be located inside the car wash. Rather, the residence would be at the front of the lot and the business would be located at the rear of the lot. The lower court correctly interpreted the ordinance and found that this was not permitted under the Village Zoning Code.
Finally, appellant argues that the zoning ordinance is unconstitutional. We disagree. It should be noted at the outset that appellant's reasoning as to how the ordinance violates his constitutional rights is a little vague and he cites no authority to support his proposition. Of course, a party's failure to cite caselaw or statutes in support of an argument, as required by App.R. 16(A)(7), is sufficient grounds to disregard that argument entirely under App.R. 12(A)(2). See Meerhoff v. Huntington Mtge.Co. (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109, 1113;State v. Riley (Dec. 29, 1998), Vinton App. No. 98CA518, unreported; Hiles v. Veach (Nov. 20, 1998), Pike App. No. 97CA604, unreported. However, even considering his argument on its merits, we are not persuaded that the zoning ordinance at issue herein is unconstitutional.
Our analysis begins with the well settled premise that zoning ordinances enjoy a strong presumption of validity. See Cent.Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 583-584,653 N.E.2d 639, 642; Hudson v. Albrecht. Inc. (1984), 9 Ohio St.3d 69,71, 458 N.E.2d 852, 855; Brown v. Cleveland (1981),66 Ohio St.2d 93, 95, 420 N.E.2d 103, 105. The party challenging that validity is the one who carries the burden of demonstrating that the provision is unconstitutional. See Ketchel v. BainbridgeTwp. (1990), 52 Ohio St.3d 239, 243, 557 N.E.2d 779, 783; Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350,1357; Mayfield-Dorsh, Inc. v. S. Euclid (1981), 68 Ohio St.2d 156,157, 429 N.E.2d 159, 160. A zoning ordinance will not be struck down unless it is shown to be clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals or general welfare of the community.Goldberg Cos., Inc. v. Richmond Hts. City Council (1998), 81 Ohio St.3d 207,690 N.E.2d 510, at the syllabus. This is an onerous standard to meet and, in our opinion, appellant has not met it herein.
The obvious gist of the Village Zoning Code is to keep businesses and residences as separate from one another as possible. See e.g. Commercial Point Zoning Ordinances §§ 7.111 
7.03. Ohio law has long recognized that municipalities have a legitimate interest in shielding residential property from commercial or business uses. See Meck Pearlman, Ohio Planning and Zoning Law (1999 Ed.) 172, § 6.9. It stands to reason then that municipalities would also have an interest in promoting certain districts for business use. This interest would logically include the power to limit or restrict residential use in the business district. We note that the zoning ordinances at issue herein do not bar residences from "B-1" districts entirely. They merely require, instead, that such residences be located in the principal use building. For instance, there was testimony during the hearing below that one nearby lot had a building which housed a United States Post Office and then had apartments over top. This sort of usage appears to be allowable under the Village Zoning Code and it would appear to us that such limitations on usage are a reasonable means of promoting the general welfare of the community of Commercial Point. Appellant cites us to no authority which takes a contrary position and we have found none in our own research. We therefore reject his argument that the zoning ordinance is unconstitutional.
To summarize, there is nothing in the record to suggest that the judgment below was arbitrary, unreasonable or unconscionable and we find no error of law therein. The trial court rendered a well reasoned and thorough decision in which we readily concur. Appellant's assignment of error is, thus, without merit and is hereby overruled. The judgment of the trial court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
HARSHA, J. EVANS, J.: Concur in Judgment Opinion
For the Court
 By:________________________ PETER B. ABELE Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.